**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

FV-I, Inc., in trust for Morgan Stanley Mortgage Capital Holdings LLC, Respondent,

v.

Bryon J. Dolan; Lisa S. Dolan; First Citizens Bank and Trust Company, Inc.; Wells Fargo Bank, N.A.; Branch Banking and Trust Company, Defendants,

Of whom Bryon J. Dolan and Lisa S. Dolan are Appellants.

Appellate Case No. 2014-001384

Appeal From Lexington County
R. Keith Kelly, Circuit Court Judge

Unpublished Opinion No. 2017-UP-031
Submitted November 1, 2016 – Filed January 11, 2017

**AFFIRMED**

Andrew Sims Radeker, of Harrison & Radeker, P.A., of Columbia, for Appellants.

Charles Stuart Gwynne, Jr. and Jason David Wyman, both of Rogers Townsend & Thomas, PC, of Columbia for Respondent.

—————————

**PER CURIAM:**  Bryon J. Dolan and Lisa S. Dolan (collectively, the Dolans) appeal the circuit court order denying their motion for a new trial after the circuit court granted FV-I, Inc., in trust for Morgan Stanley Mortgage Holdings LLC's (FV-I's) motion for a directed verdict on the Dolans' claim under the South Carolina Unfair Trade Practices Act (SCUTPA), and the jury returned a verdict for FV-I on the Dolans' breach of contract claim.  On appeal, the Dolans argue the circuit court erred by (1) admitting into evidence loan payment history from a previous mortgage servicer, Saxon Servicing Group (Saxon), under the business records exception to hearsay; (2) allowing FV-I's sole witness, Loretta Poch, to testify regarding the content of the Saxon loan payment history; and (3) granting FV-I's motion for a directed verdict as to the Dolans' SCUTPA claim.  We affirm.[1]

1.  We find the circuit court did not abuse its discretion by admitting into evidence the Saxon loan payment history under the business records exception to hearsay. *See Menne v. Keowee Key Prop. Owners' Ass'n, Inc.*, 368 S.C. 557, 568, 629 S.E.2d 690, 696 (Ct. App. 2006) ("The admission or exclusion of evidence is within the sound discretion of the [circuit] court, whose ruling will not be reversed on appeal absent an abuse of discretion.").

We find the Saxon loan payment history was relevant in this matter because it tended to establish whether the Dolans remitted sufficient funds to reinstate their mortgage.  *See* Rule 401, SCRE ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").  Because the Saxon loan history was offered to prove the amount owed on the Dolans' mortgage, it constituted hearsay; however, we find the loan history fit squarely within the business records exception, making it admissible in these proceedings.  *See* Rule 801(c), SCRE ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Rule 802, SCRE ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by [the South Carolina Rules of Evidence] . . . ."); Rule 803(6), SCRE ("A . . . record . . . made at or near the time by, or from information transmitted by,

_____

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.

a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . . all as shown by the testimony of the custodian or other qualified witness, unless the source of the information or the method or circumstance of preparation indicate lack of trustworthiness . . . .").

We find FV-I demonstrated the Saxon loan history met the requirements for the circuit court to admit it under the business records exception. *See Ex parte Dep't of Health & Envtl. Control*, 350 S.C.243, 249-50, 565 S.E.2d 293, 297 (2002) ("Rule 803(6), SCRE, provides that memorandum, reports, records, etc. in any form, of acts, events, conditions, or diagnoses, are admissible as long as they are (1) prepared near the time of the event recorded; (2) prepared by someone with or from information transmitted by a person with knowledge; (3) prepared in the regular course of business; (4) identified by a qualified witness who can testify regarding the mode of preparation of the record; and (5) found to be trustworthy by the court.").

We find the Saxon loan history was made at or near the time of the events recorded. *See* Rule 803(6), SCRE; *Dep't of Health & Envtl. Control*, 350 S.C. at 249-50, 565 S.E.2d at 297 (requiring business records be "prepared near the time of the event recorded" in order to be admissible under the business records exception). Here, the Saxon loan history reflected 143 entries recorded over the nineteen months Saxon serviced the Dolans' mortgage, the principal amount of the mortgage, late fees assessed for missed payments, disbursements for hazard insurance and property taxes, and the $65,250 payment the Dolans allege should have brought their mortgage current. Accordingly, we find the Saxon loan history met the mandate that records be created at or near the time of the event recorded, ensuring the Saxon loan history was honestly and fairly kept. *See S.C. Nat'l Bank v. Jones*, 302 S.C. 154, 155, 394 S.E.2d 323, 324 (1990) ("[A] requisite for the admissibility of business records is that entries therein must have been made at or near the time of the transactions to which they relate. The purpose of this mandate is to aid in establishing that the record was honestly and fairly kept.").

We also find the Saxon loan history shows it was prepared in the regular course of business by Saxon employees with knowledge. *See* Rule 803(6), SCRE (providing business records are admissible "if kept in the course of a regularly conducted business activity" and were "made at or near the time by . . . a person with knowledge"); *Dep't of Health & Envtl. Control*, 350 S.C. at 249-50, 565 S.E.2d at 297 (requiring business records be "prepared by someone with or from information transmitted by a person with knowledge . . . in the regular course of business" in

order to be admissible under the business records exception).  While Poch conceded she never worked for Saxon and had no personal knowledge of its internal procedures, she also testified she knew Saxon matched industry-standard practices and her employer, Specialized Loan Servicing (SLS), rigorously screened all loan histories sent to it for onboarding to ensure no anomalies or inconsistencies existed.  We find this testimony, coupled with the Saxon loan history showing entries that were made at or near the time the events occurred, demonstrate Saxon employees with knowledge of the Dolans' mortgage prepared Saxon's loan history in the ordinary course of business.

Further, we find Poch was qualified to identify the Saxon loan history and to testify regarding the mode of its preparation, even though she did not personally participate in creating the loan history and Saxon did not employ her.  *See* Rule 803(6), SCRE (providing a record custodian or other qualified witness must testify the evidence to be submitted under the business records exception meets the requirements of Rule 803(6), SCRE); *Dep't of Health & Envtl. Control*, 350 S.C. at 249-50, 565 S.E.2d at 297 (requiring business records be "identified by a qualified witness who can testify regarding the mode of preparation of the record" in order to be admissible under the business records exception).  We find Poch was not required to have personally participated in the creation of the Saxon loan history nor to have been the custodian of those records at the time they were created.  *See Deep Keel, LLC v. Atl. Private Equity Grp., LLC*, 413 S.C. 58, 73, 773 S.E.2d 607, 615 (Ct. App. 2015) ("[A] witness is qualified to testify about a business record, despite the fact he or she did not personally participate in creating the record and was not the custodian 'at or near the time' the record was made.").  Rather, to be considered a "qualified witness," Poch needed only to convey information from a person with knowledge.  *See id.* ("[A] person is a 'qualified witness' under the rule if the testimony conveys information from a person 'with knowledge' at the time the records were created.").  We find Poch's testimony regarding Saxon's conformance with industry standards and SLS's rigorous onboarding process demonstrated Poch, in effect, relayed information on behalf of Saxon employees who obtained knowledge in the ordinary course of business when they entered information regarding the Dolans' mortgage.

Finally, we find the circuit court considered the Saxon loan history trustworthy. *See* Rule 803(6), SCRE (providing a business record is admissible under Rule 803(6), SCRE, unless the source of the information or method of preparation indicate the business record to be admitted is not trustworthy); *Dep't of Health & Envtl. Control*, 350 S.C. at 249-50, 565 S.E.2d at 297 (requiring the circuit court to find records submitted pursuant to the business records exception are trustworthy).

Accordingly, we find the circuit court did not abuse its discretion by admitting the Saxon loan history under the business records exception contained in Rule 803(6), SCRE.

2.  We find the circuit court erred by allowing Poch to offer testimony regarding the Dolans' mortgage and the amount required to bring the mortgage current; however, because Poch's testimony was cumulative, its admission did not prejudice the Dolans and therefore does not constitute reversible error.  *See Small v. Pioneer Mach., Inc.*, 329 S.C. 448, 470, 494 S.E.2d 835, 846 (Ct. App. 1997) ("[T]he improper admission of hearsay is reversible error only when the admission causes prejudice."); *id.* ("Where the hearsay is merely cumulative to other evidence, its admission is harmless.").  We find Poch's testimony was hearsay, as she conceded at trial her only knowledge of the Dolans' mortgage was based on her review of the Saxon loan history.  *See Deep Keel*, 413 S.C. at 71, 773 S.E.2d at 614 ("By testifying to a conclusion based only on statements [witness] read in documents, [witness] necessarily testified to the truth of those statements [and] [h]is testimony, therefore, was offered to prove the truth of the statements and was hearsay.").  Even though Poch's testimony regarding the Dolans' mortgage and the amount required to bring the loan current was hearsay, we find the testimony was cumulative for the following reasons: (1) email correspondence between Bryon and Saxon demonstrated Bryon received a reinstatement quote informing the Dolans an additional $35,000 was required to bring their mortgage current after the $65,250 payment was applied; (2) an escrow shortfall of $26,039.05 existed; and (3) the Dolans had a variety of options available to bring their loan current.  In light of this evidence, Poch's testimony did not prejudice the Dolans because the Dolans showed they knew more money was required in order to reinstate their loan.

3.  We find the circuit court properly granted a directed verdict for FV-I on the Dolans' SCUTPA claim.  *See Wright v. Craft*, 372 S.C. 1, 22, 640 S.E.2d 486, 498 (Ct. App. 2006) ("When the evidence yields only one inference, a directed verdict in favor of the nonmoving party is proper."); *Guffey v. Columbia/Colleton Reg'l Hosp., Inc.*, 364 S.C. 158, 163, 612 S.E.2d 695, 697 (2005) ("On review, [appellate courts] will affirm a directed verdict where there is no evidence on any one element of the alleged cause of action.").  We find the Dolans failed to show the second prong to recover under SCUTPA: FV-I's conduct affected the public interest.  *See Wright*, 372 S.C. at 23, 640 S.E.2d at 498 ("To recover in an action under [SCUTPA], the plaintiff must show: (1) the defendant engaged in an unfair or deceptive act in the conduct of trade or commerce; (2) the unfair or deceptive act affected the public interest; and (3) the plaintiff suffered monetary or property

loss as a result of the defendant's unfair or deceptive act(s)."). Here, the Dolans failed to show FV-I's alleged wrongful misrepresentation of the amount required to bring their mortgage current occurred prior to the Dolans working with FV-I, and they failed to show it was likely to occur again in the future. *See Crary v. Djebelli*, 329 S.C. 385, 387, 496 S.E.2d 21, 23 (1998) ("Unfair or deceptive acts or practices have an impact upon the public interest if the acts or practices have the potential for repetition."); *id.* ("The potential for repetition may be shown in two ways: [(]1 by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence, or [(]2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts."); *id.* ("[Our supreme court] specifically declined . . . to hold that these are the only means for showing potential repetition and stated each case must be evaluated on its own merits."). Here, the circumstances underpinning the Dolans' efforts to bring their mortgage current by selling a portion of their property were rare and are unlikely to repeat. Therefore, we find the Dolans failed to show FV-I's actions affected the public interest, and the circuit court properly granted FV-I's motion for a directed verdict on the Dolans' SCUTPA claim.

**AFFIRMED.**

**WILLIAMS, THOMAS, and GEATHERS, JJ., concur.**